(202 P.3d 39)

No. 98,237

STATE OF KANSAS, *Appellee*, v. JORGE BEJARANO, *Appellant*.

Opinion filed February 20, 2009.

*Christina Waugh*, of Kansas Appellate Defender Office, for appellant.

*Sheryl L. Lidtke*, deputy district attorney, *Jerome A. Gorman*, district attorney, and *Stephen N. Six*, attorney general, for appellee.

Before HILL, P.J., MALONE and CAPLINGER, JJ.

HILL, J.: In America, anyone accused of a crime has a constitutional right to confront those who accuse that person in court. Here, in a prosecution for rape and aggravated indecent liberties with a child, a victim under the age of 13 testified by closed-circuit television rather than in person before the defendant in the courtroom. Because the trial court made all the findings required by law before admitting this televised testimony, we hold the defendant's right to confront his accuser was not compromised and uphold his convictions. Also, the prosecutor's comment in closing argument suggesting that the victim's testimony was consistent did not go beyond the limits of fair argument and was not misconduct compelling reversal. Therefore, we affirm.

*This jury trial was the defendant's second for these crimes.*

The State charged Jorge Bejarano with one count of rape and one count of aggravated indecent liberties with B.G. His first trial resulted in a hung jury. During the first trial, the State called B.G. to testify. After she took her seat at the witness stand in the courtroom, B.G. was unable to testify and gave no oral responses to most of the questions about the sexual abuse allegations.

Before the second trial, the State asked the court to allow B.G. to testify by closed-circuit television under K.S.A. 22-3434. After inquiry and making various important findings, the court approved that request, and B.G. was able to effectively testify. In this second trial, the evidence revealed that starting when B.G. was 7 and through the time she was 9 years old, Bejarano often fondled her and on at least one occasion raped B.G. From her testimony, the jury convicted Bejarano of both rape and aggravated indecent liberties with a child.

In this appeal, asking us to overturn his convictions, Bejarano makes two arguments. First, he contends that the trial court denied his constitutional right to confront his accuser in court when it allowed the State to present B.G.'s testimony to the jury through the medium of closed-circuit television. Next, Bejarano argues his prosecutor improperly cross-examined him in an attempt to inflame the jury against him and that during the closing argument the State's attorney flagrantly bolstered B.G.'s testimony to the

extent that the remarks amounted to misconduct. We will address these two issues in that order.

*We state the appropriate standard of review and discuss the statute concerning trial testimony via television.*

Dealing with the legal propriety of televised testimony concerns the United States Constitution guaranty of the right to confront those who testify against a defendant, as well as an interpretation of the Kansas statute that serves as the exception to the right of face-to-face confrontation. The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him or her. This Sixth Amendment guarantee was made applicable to the States through the Fourteenth Amendment to the United States Constitution. See *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965); see also *State v. Brown*, 285 Kan. 261, 282, 173 P.3d 612 (2007). For criminal defendants in Kansas, the state constitution has preserved a similar right, where it provides: "In all prosecutions, the accused shall be allowed . . . to meet the witnesses face to face." Kansas Const. Bill of Rights, § 10; see *Brown*, 285 Kan. at 282.

Nevertheless, Kansas law recognizes some unique circumstances where the testimony of a child victim is admissible even though the defendant and the child victim witness are not in the same room when the testimony is given. K.S.A. 22-3434 affords the trial court an opportunity to use closed-circuit televison in certain cases:

"(a) On motion of the attorney for any party to a criminal proceeding in which a child less than 13 years of age is alleged to be a victim of the crime, subject to the conditions of subsection (b), the court may order that the testimony of the child be taken:

(1) In a room other than the courtroom and be televised by closed-circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding; . . .

. . . .

"(b) The state must establish by clear and convincing evidence that to require the child who is the alleged victim to testify in open court will so traumatize the child as to prevent the child from reasonably communicating to the jury or render the child unavailable to testify. The court shall make such an individualized finding before the state is permitted to proceed under this section."

Obviously, these are questions of law, and we will employ an unlimited review over them. "Issues related to confrontation under the Sixth Amendment to the United States Constitution or the Kansas Constitution Bill of Rights, § 10 raise questions of law over which [an appellate] court exercises de novo review." *Brown*, 285 Kan. at 282.

*The trial court made all of the required findings.*

There are three foundational findings a trial court must make before allowing a child victim witness to testify by closed-circuit television:

"(1) hear evidence and determine use of [the] one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant; and (3) find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, *i.e.*, more than mere nervousness or excitement or some reluctance to testify." *State v. Blanchette*, 35 Kan. App. 2d 686, 700, 134 P.3d 19, *rev. denied* 282 Kan. 792 (2006), *cert. denied* 549 U.S. 1229 (2007) (citing *State v. Chisholm*, 250 Kan. 153, 166, 825 P.2d 147 [1992]).

The trial court entertained testimony in support of the State's motion to permit closed-circuit televised testimony. The judge heard from a psychotherapist, a social worker, and a victim/witness assistant from the District Attorney's office on the point. Their testimony, when weighed with the judge's own observations of B.G.'s conduct in the first trial, impelled the court to reach the conclusion that this procedure was appropriate in this case.

First, B.G.'s psychotherapist, Annette Rasmussen, testified it was difficult for B.G. to talk about the sexual abuse and that she was often unable to do so and "closed down" when the topic of the sexual abuse was raised. Rasmussen diagnosed B.G. with posttraumatic stress disorder as a result of the sexual abuse and explained that people diagnosed with this disorder often have intense psychological distress regarding anything that symbolizes or resembles the trauma that was suffered. Rasmussen said she tried to talk to B.G. following her testimony in the first trial, but whenever she brought up the courtroom, B.G. would become completely silent. The psychotherapist went on to say that if B.G. had to again testify

in court before Bejarano and the jury, it "could very possibly be traumatizing." Further, Rasmussen testified such testimony would cause B.G. intense psychological distress and would increase her distrust of the world as a safe place. While she indicated B.G.'s progress in therapy regressed after the first trial, on cross-examination Rasmussen agreed that she could not say with any degree of medical certainty that it was B.G.'s testimony in the first trial that had the negative impact on her progress in therapy.

Then B.G.'s social worker, Amanda Staci, testified. Staci was assigned by the Wyandotte Center for Community Behavioral Health to work with B.G. on improving B.G.'s communication skills. Staci testified that anytime she tried to talk with B.G. about the sexual abuse, B.G. broke down and was unable to communicate. She also testified that when she tried to prompt B.G. to talk about the sexual abuse, B.G.'s psychological well-being deteriorated and she would withdraw, often cry, and appear very uncomfortable. When asked whether B.G.'s trauma would be increased if she was compelled to testify in open court again, Staci responded, "I think that there is a possibility that it can traumatize her. She's been through a lot—I can't even get her to communicate to me even one-on-one. I don't know."

After that, a victim/witness assistant from the District Attorney's office, Angela Kolenda, testified. She told the court that B.G. spoke to her openly about the sexual abuse, but in the courtroom during the first trial, B.G. would not respond to questions about the sexual abuse. During that first trial, Kolenda asked B.G. why she was not answering questions in court and B.G. said it was because she could see Bejarano.

Additionally, the judge was able to use his own eyes and ears. Because this was the second trial of this matter, the judge had the benefit of observing B.G.'s terror on the witness stand. "The Court recalls vividly the difficulty the child had at the first trial, and the marked difference between her demeanor in court and how it was at the time of the [videotaped] statement given to the Sunflower House."

Finally, the judge made meticulous findings and concluded:

"Taking everything into consideration, this Court finds that the evidence presented, coupled with the observations by this Court at the first jury trial, establishes by clear and convincing evidence that to require the child, the alleged victim in this case, to testify in open court in the presence of the defendant will traumatize the child to the extent as to prevent her from reasonably communicating to the jury or would render the child unavailable to testify. This Court further finds that the evidence establishes by clear and convincing evidence that the child witness will be traumatized by the presence of the defendant and not just the courtroom generally. The trauma to the child in this case is more than mere nervousness, and the evidence shows that the child witness has suffered and will suffer trauma to a degree she will be unable to testify in the presence of the defendant, and that to force her to do so will cause long-lasting negative effects."

We do not hesitate to say the trial court's findings here are supported by substantial competent evidence. The court correctly followed the statutory procedure of entertaining evidence and making the required findings. The trial court here had compelling reasons to employ closed-circuit testimony of the child victim, and there is no good reason to reverse the court's ruling. There is no reversible error here.

*We find no misconduct by the prosecutor.*

Initially, Bejarano complains about the State's attorney asking him questions about the use of his home computer to view pornography. He argues "the State attempted to elicit testimony about pornography which may have been on Mr. Bejarano's computer." Bejarano's trial counsel objected to this line of questions, and the trial court sustained the objection. We point out the obvious: Any potentially irrelevant material was never admitted to the jury. A mere attempt by the State to ask questions about the use of the computer, under the circumstances here, does not rise to the level of prosecutorial misconduct.

Next, Bejarano contends the prosecutor made improper comments during closing argument by bolstering B.G.'s veracity:

"[B.G.] was able to remember that detail. 'I told him to stop because it hurt.' She's given us a lot of details. She's been consistent with those core details.

"Have they changed a little bit from time to time? Yeah. A year later now she didn't tell us yesterday about the touches on the back.

"She didn't tell us about the touches on the chest, but the core details about touching with his hands to her private parts and with his private part to her private part have remained consistent.

"Consistency is a key. Because if a child is lying, if the child like [B.G.], as young as she is, is lying about the core details, then you usually can't keep them all straight. They forget what they told somebody, and they'll tell somebody something completely different next time."

Here we follow our normal procedure when ruling on such an issue. Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

For support, Bejarano cites *State v. Pabst*, 268 Kan. 501, 505, 996 P.2d 321 (2000), where the court examined a case where the prosecutor repeatedly called the defendant a liar during closing arguments while also maintaining that the prosecution was telling the truth. That case certainly differs from the facts here. The prosecutor did not personally interject her belief of B.G.'s veracity. Rather, she pointed out to the jury why it should believe B.G. She pointed out the consistencies in B.G.'s testimony but clearly left the ultimate determination of credibility to the jury. We view the prosecutor's comments to be within the wide latitude allowed in discussing the evidence. Therefore, we need not take up the second step in the misconduct analysis. There is no reversible error here.

Affirmed.