NOT DESIGNATED FOR PUBLICATION

No. 116,840

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON R. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed February 2, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.

PER CURIAM: Brandon R. Williams appeals his convictions for burglary and felony theft. Williams contends the prosecutor erred when he stated during closing argument that the defense was asking the jury to make a "leap of faith" that by some "coincidence" Williams was not involved in the burglary and theft. Finding no prosecutorial error in this closing argument, we affirm the convictions.

On the morning of December 12, 2015, Jordan Ray left his residence in Wichita to go to work. At about 11 a.m., Ray received a phone call from Williams. Williams and Ray had known each other for about 10 years. Although Williams and Ray were not friends, Williams had visited Ray's residence on multiple occasions to play video games. Ray returned Williams' call and Williams said he had left a shirt at Ray's house and he wanted it back. Ray told Williams that he could bring the shirt to Williams after he got off work at 2 p.m.

Upon arriving at his residence after work, Ray noticed that his front door had been kicked in and the security camera on his front porch was turned around so it was not facing the front door. After calling the police to report the burglary, Ray discovered that his 50-inch Westinghouse TV, MacBook Air laptop computer, PlayStation 4, clothes, shoes, another TV, games, movies, and jewelry had been stolen. Police officers arrived at Ray's residence about 3:49 p.m. As part of their investigation, officers obtained the serial numbers for the 50-inch TV and computer.

Of note, Williams did not contact Ray to follow up on retrieving his shirt. In fact, Williams' shirt had been stolen with the other items missing from Ray's home. Ray never saw or talked to Williams again after the burglary.

During the police investigation, authorities were notified that Ray's 50-inch TV and computer had been received by A-Ok Pawn Shop. This information was obtained after the serial numbers of the stolen items were reported to the National Crime Information Center. Authorities contacted A-Ok Pawn Shop and confirmed the serial numbers on the items received by the pawn shop matched the serial numbers provided by Ray.

When an individual sells or pawns an item at the A-Ok Pawn Shop, a pawn ticket is made which includes information about the item, the seller of the item, and how long the seller has owned the item. In this case, Williams used his driver's license as identification. Pawn tickets signed by Williams were made during the transactions for both the TV and computer. The transactions were also recorded, and Ray identified Williams as the individual in the recordings who pawned his possessions.

The pawn tickets indicated that Ray's TV was pawned for a $100 loan between 3:57 p.m. and 4:05 p.m. on December 12, 2015, the same day as the burglary. Ray's computer was sold for $230 at about 5:39 p.m on December 14, 2015. When selling the computer, Williams indicated on the pawn ticket that he had owned it for 5 months and 25 days.

Williams was charged with burglary and felony theft. At the jury trial, Williams testified on his own behalf. Williams agreed that he called Ray on December 12, 2015, and he said Ray told him that he would bring the shirt to Williams after he got off work. However, Williams denied going to Ray's home on December 12, 2015. Williams testified that he did not follow up with Ray about his shirt because he was informed that Ray's home had been burglarized. Williams reasoned that there was no point to contact Ray after the burglary.

Williams testified that on December 12, 2015, while on Facebook, he saw that one of his Facebook friends, DeAndre Wilson, was selling a TV and computer. Williams testified he purchased both items from Wilson for $350. When Williams purchased these items, he thought they belonged to Wilson and he did not believe they were stolen. Williams acknowledged that he had pawned the TV on December 12, 2015, and sold the computer two days later. Williams testified that he had purchased the TV in anticipation of moving out of his current apartment. However, because there was not room in his

current apartment for the TV, Williams decided to pawn the TV and pick it up after he moved to his new apartment.

During the rebuttal portion of the State's closing arguments, the prosecutor stated:

"[W]e're talking about assumptions, leaps of faith. What are they asking you, what leap of faith are they asking you? They're asking you to make a leap of faith—

. . . .

". . . [T]hat by some coincidence Mr. Williams bought a laptop from somebody named DeAndre Wilson, and then he took that laptop and that—or laptop and TV and took it home. He decided it wasn't going to fit because he was going to move, and then from that point forth he decided he was going to pawn it. And somehow, some way, that happened to be the exact same laptop and the exact same TV of a friend of his that he had talked to earlier that day. That's a leap of faith. They're asking you to take a leap of faith. That's a leap of faith, and that's a leap of faith that you just can't make in this case."

The jury found Williams guilty of burglary and felony theft. Williams was sentenced to 32 months in prison, 12 months of postrelease supervision, and ordered to pay $8,242.51 in restitution. Williams appeals.

DISCUSSION

On appeal, Williams contends the State committed prosecutorial error by stating that the defense was asking the jury to make a "leap of faith" that by some "coincidence" Williams bought the stolen TV and computer which belonged to the person whom he had talked to earlier that day. Specifically, Williams asserts that the argument was unduly prejudicial because the prosecutor (1) asserted his personal opinion that Williams' testimony was false; and (2) asked the jury to base its verdict on mathematical probabilities.

4

Williams did not object to the prosecutor's statements at trial. Still, a contemporaneous objection is not required for review of a prosecutorial error claim based on comments made during closing argument. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). As a result, we will consider Williams' claim for the first time on appeal.

To evaluate claims of prosecutorial error, appellate courts use a two-step process: First, determine whether any error occurred and, second, determine whether there was prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

To determine whether prosecutorial error occurred, this court "must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

If error is found, the appellate court moves to the second step and must determine "whether the error prejudiced the defendant's due process rights to a fair trial." 305 Kan. at 109. Evidence of prejudice is evaluated under the traditional constitutional harmless error inquiry enumerated in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Sherman*, 305 Kan. at 109.

> "In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

The wide latitude afforded to prosecutors in discussing the evidence during closing arguments "'includes at least limited room for rhetoric and persuasion, even for eloquence and modest spectacle. It is not opening statement; it is not confined to a dry

5

recitation of the evidence presented.' [Citation omitted.]" *State v. Kleypas*, 305 Kan. 224, 319-20, 382 P.3d 373 (2016), *cert. denied*, 137 S. Ct. 1381 (2017). However, "[a] prosecutor is forbidden from offering a personal opinion that the defendant's testimony is untruthful." *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014). "The point of not allowing a prosecutor to comment on the credibility of a witness is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000).

Nevertheless, during closing argument the prosecutor is allowed "to point out inconsistencies in a defendant's statements and to argue evidence that reflects poorly on a defendant's credibility." *State v. Akins*, 298 Kan. 592, 608, 315 P.3d 868 (2014). For example, "when the evidence presents the jury with two conflicting stories the prosecutor can argue why one version is not believable." *State v. Barber*, 302 Kan. 367, 381, 353 P.3d 1108 (2015).

In the present case, the prosecutor's remarks regarding a "leap of faith" and "coincidence" did not relate to a personal opinion or belief in Williams' guilt. Nor did the prosecutor attack Williams' credibility by calling him a liar or claiming that he was being deceptive in presenting this defense.

On the contrary, the prosecutor appropriately argued that Williams' exculpatory account was not as believable as the State's theory that Williams committed the burglary and theft. In this regard, for example, the prosecutor emphasized the timeline of events which included evidence that Williams pawned Ray's TV only eight minutes after police were dispatched to Ray's residence to investigate the burglary. The State's well-documented evidence was wholly inconsistent with Williams' exculpatory account. This account involved Williams viewing a Facebook posting about Ray's stolen TV, contacting his Facebook friend who apparently had stolen the TV, purchasing the TV and

computer, deciding the TV was too large for his apartment, and then going to the A-OK Pawn Shop to pawn it. And, as testified to by Williams, all of these purported events occurred within hours of Williams learning that Ray would not be at home on the afternoon that the burglary occurred.

In this regard, we view the prosecutor's argument as consonant with the district court's jury instruction that advised the jury, "You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." Williams' inculpatory account was contrary to common knowledge and experience in contrast to the State's well-founded incriminating account that provided direct and circumstantial evidence that Williams committed the burglary and theft in order to convey the stolen property to obtain money. We conclude the prosecutor did not err when he tailored his comments to the evidence and made reasonable inferences drawn from that evidence without expressing a personal belief or opinion about the defendant's credibility.

Williams also objects to the prosecutor's use of the word "coincidence" in characterizing the defense account. By using this word, according to Williams, the "prosecutor inserted such opinion of the defendant's guilt by essentially alluding to the probability of Williams being innocent." As discussed earlier, the prosecutor did not use the word "coincidence" or "leap of faith" in the form of a personal opinion or expression of personal belief. Rather, the prosecutor's argument was a fair description of the frailties of the defense case, given the State's compelling, incriminating evidence.

In support of his argument related to probabilities, Williams cites *People v. Collins*, 68 Cal. 2d 319, 66 Cal. Rptr. 497, 438 P.2d 33 (1968). But *Collins* related to the error of a prosecutor offering a mathematics professor's testimony based on a probability analysis which the prosecutor claimed "supplied mathematical proof of guilt." 68 Cal. 2d

at 331. In the present case, no such statistical analysis or closing argument claiming mathematical proof of guilt was made by the prosecutor.

William also cites *United States v. Narciso*, 446 F. Supp. 252 (E.D. Mich. 1977), in support of his argument. Once again, this case provides no support because it dealt with a prosecutor's argument that suggested that because two nurses were involved in 35 cases of patients who were poisoned, there was little probability that their conduct was innocent. The court held that the prosecutor's argument was improper because it invited the jury to disregard its duty to consider each charge and the evidence pertaining to it separately and instead "engage in a speculative combination of the charges." 446 F. Supp. at 323.

We discern no similarity between *Narciso* and *Collins* and this case on appeal. The prosecutor did not ask the jury to find Williams guilty based on statistical probabilities. He simply made a fair comment on the evidence. Our court has found that similar statements do not amount to an improper argument regarding statistical probabilities of guilt. For example, in *State v. Baker*, No. 96,979, 2008 WL 440683, at *3 (Kan. App. 2008) (unpublished opinion), the court rejected the same caselaw cited by Williams from *Narciso* and concluded "the prosecutor's rhetorical question asking whether the two incidents were coincidental did not constitute a probability analysis, or statistical or mathematical calculation . . . ."

The use of the language "leap of faith" and "coincidence" were part of the rhetoric and persuasion allowed prosecutors given their wide latitude to discuss the evidence during closing argument. We hold the statements do not constitute prosecutorial error.

For the sake of completeness, we also note that—assuming the prosecutor's remarks were in error—our review of the totality of the trial evidence shows any error in the prosecutor's argument would have been harmless because the State has demonstrated

beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. See *Sherman*, 305 Kan. at 109. As detailed in the Factual and Procedural Background section, the evidence of Williams' guilt, both direct and circumstantial, was substantial and convincing. We find no prejudice that would have adversely affected the defendant's due process rights to a fair trial.

Affirmed.