NOT DESIGNATED FOR PUBLICATION

No. 120,831

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL D. MCCRAY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sherman District Court; KEVIN BERENS, judge. Opinion filed July 24, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kurtis Wiard*, assistant solicitor, and *Derek Schmidt*, attorney general, for appellee.


Before WARNER, P.J., MALONE and BRUNS, JJ.


PER CURIAM: Michael D. McCray appeals his jury conviction for aggravated sexual battery. On appeal, McCray contends that the prosecutor made improper statements during closing arguments that rise to the level of prosecutorial error. Based on our review of the record, we conclude that the challenged arguments did not fall outside the wide latitude afforded prosecutors. Moreover, we conclude that even if one or more statements made by the prosecutor were deemed to be erroneous, there is no reasonable possibility that the alleged errors contributed to the verdict. Thus, because McCray received a fair trial, we affirm his conviction.

1

The parties are well aware of the evidence presented at trial. As such, we will not discuss the facts in detail in this portion of our opinion. Instead, we will briefly summarize the facts and discuss them in more detail in the analysis section. We will also discuss additional facts as necessary as we address the specific contentions set forth in the briefs.

In this case, McCray was charged with rape, aggravated criminal sodomy, and aggravated sexual battery arising out of an incident involving L.H. in his dorm room. It is undisputed that L.H. went to McCray's dorm room voluntarily on the night in question. It is also undisputed that sexual activity occurred. But McCray and L.H. dispute whether the sexual activity was consensual or nonconsensual.

At trial, the State presented the testimony of L.H., two police officers, and a Sexual Assault Nurse Examiner. In addition, the State introduced 11 exhibits that were admitted into evidence. These exhibits included text messages between McCray and L.H. the morning following the incident, photographs of marks on L.H.'s body, and the results of the sexual assault exam. In addition, McCray testified on his own behalf and called four other witnesses.

Prior to the presentation of closing arguments by the prosecutor and defense attorney, the district court instructed the jurors that the State had the burden to prove each charge beyond a reasonable doubt; that they must decide the case only on the evidence admitted at trial; and that the arguments of counsel are not evidence. The district court also instructed the jury regarding the elements of each of the charges brought against McCray by the State.

After deliberation, the jury convicted McCray of aggravated sexual battery. However, it acquitted him on the charges of rape and aggravated criminal sodomy. Subsequently, the district court imposed a 32-month prison sentence suspended to probation for a term of 36 months. Thereafter, McCray filed a timely notice of appeal.

ANALYSIS

The sole issue presented on appeal is whether the State committed prosecutorial error during closing arguments. Specifically, McCray argues that the prosecutor prejudiced his defense and denied him a fair trial by making improper comments during the initial and rebuttal portions of closing arguments. In reviewing this issue, we apply the two-step test established by the Kansas Supreme Court in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016).

As our Supreme Court explained:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012)." *Sherman*, 305 Kan. at 109.

In Kansas, prosecutors are given wide latitude in the language used during the presentation of closing arguments, so long as the arguments are consistent with the evidence admitted at trial. *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). This wide latitude includes making reasonable inferences drawn from the evidence. *Pabst*, 268 Kan. at 507; *State v. Haygood*, 308 Kan. 1387, 1398, 430 P.3d 11 (2018). However, "[a] prosecutor may not misstate the law applicable to the evidence presented, may not offer a personal opinion about witness credibility, and may not shift the burden of proof to the defendant." *State v. Pribble*, 304 Kan. 824, Syl. ¶ 6, 375 P.3d 966 (2016).

Further, a prosecutor may not make inflammatory remarks that appeal to the jurors' sympathies or prejudices. *State v. Holt*, 300 Kan. 985, 992, 336 P.3d 312 (2014). Nevertheless, "it is incumbent on a reviewing court to consider a prosecutor's comments in the context in which they are made, not in isolation." *Haygood*, 308 Kan. at 1399. In other words, "[c]ourts do not isolate the challenged comments; they consider them in the context they were made." *State v. Butler*, 307 Kan. 831, 865, 416 P.3d 116 (2018).

During the initial portion of the State's closing argument, the prosecutor argued:

"*This is a case of what rape really looks like. The victim, [L.H.], was vulnerable.* The offender was someone she knew. Someone she trusted. It's a violation. A violation of trust and a violation of [L.H.'s] body.

"She trusted the defendant to give her a ride home. She trusted the defendant when plans changed to give her a safe place to stay.

"She trusted the defendant to let her sleep the night off. She trusted the defendant to know what, 'Stop. Don't do that' means.

"He violated the trust. Worse yet, he violated [L.H.'s] body. Violated so bad he left his mark.

. . . .

"So bad he left further marks. A laceration on her anus. *This is not a case about he-said-she-said. . . .*

"*This is a case about an insensitive young man with a sense of entitlement* who refused to take, 'Stop. Don't do that,' for an answer. Not once. But several times.

. . . .

"Ladies and Gentlemen of the jury, this assault was no accident. They want to say, Well Mr. McCray's your guy, kind of came to your aid, he gave you a ride home. Even as [L.H.] testified, he kind of rescued you from some guys at the party. He was being good. He was helping you out.

"*Mr. McCray's an opportunist. It's like any other sexual assault offender, an opportunist. He saw the opportunity, saw a victim who was vulnerable.* Not there to help. He's helping himself. And he did. He helped himself to [L.H.'s] body that night." (Emphases added.)

In light of the wide latitude given to the State during closing argument, we find that the prosecutor's statements were fair arguments based on the evidence. In particular, substantial evidence of L.H.'s vulnerability was admitted at trial. For instance, the record reveals that evidence was presented that L.H. was intoxicated and unable to drive herself home. In addition, L.H. testified that she agreed to stay in McCray's dorm room because of her intoxication. She also testified that, although she attempted to go to sleep, McCray forced himself on her. Such testimony, if believed, reasonably supports the inference that L.H. was "vulnerable" during the incident.

We also find the prosecutor's statement that "this is not a case about he-said, she-said" to be fair argument based on the evidence. As the prosecutor pointed out, in addition to L.H.'s testimony regarding what happened that night in McCray's dorm room,

there were also photographs of marks on her body that were admitted into evidence. These photographs depicted marks on L.H.'s neck, chest, and breasts. Also, text messages between L.H. and McCray sent the morning after the incident were admitted into evidence. Accordingly, there was evidence that supported L.H.'s version of what had occurred, and it was appropriate for the State to point this out to the jury.

In addition, we find the prosecutor's argument that "[t]his is a case about an insensitive young man with a sense of entitlement who refused to take, 'Stop. Don't do that,' for an answer" was based on reasonable inference from the evidence. L.H. testified at trial regarding various things that McCray did to her and his refusal to stop, notwithstanding her complaints that he was hurting her. Such evidence, if believed, reasonably supports the inference of a lack of respect for L.H.'s personal autonomy. It was also fair for the prosecutor to infer from such evidence that McCray felt that he was entitled to have sex with her even though she did not consent.

Similarly, McCray argues that it was inappropriate for the prosecutor to suggest that he was "like any other sexual assault offender, an opportunist." Once again, we find this argument to be reasonable based on the evidence presented at trial. L.H. testified that she was intoxicated and simply looking for a safe place to rest. It is not unreasonable, based on L.H.'s testimony, to infer that McCray attempted to exploit an opportunity when an intoxicated, young woman was lying on his bed. Likewise, it is not unreasonable to infer that opportunistic behavior is a significant factor associated with instances of sexual assault.

Furthermore, McCray argues that two statements made by the prosecutor in the rebuttal portion of his oral argument constituted prosecutorial error. He first challenges the prosecutor's rebuttal argument that L.H. never said that she "performed oral sex" but instead that there was "oral penetration." A review of the record reveals that the

6

prosecutor was responding directly to the argument made by defense counsel during his portion of closing argument.

In particular, defense counsel argued that the nurse who performed the sexual assault examination on the day following the incident had testified that L.H. had said, "I performed oral sex on Mike." As such, it was appropriate for the prosecutor to clarify what the nurse had actually said during her testimony. Moreover, a review of the record confirms that the nurse clarified that her written report should have said that there was "oral penile penetration." We find that it was fair for the prosecutor to point out the differences in the two statements because it was material to the issue of whether this was a consensual sexual act.

Next, McCray takes issue with the following argument made by the prosecutor during rebuttal: "Fight or flight. Shameful. Continuing to perpetuate the myths of rape. That's all that is. Hogwash. Smoke screen. Red herring." Although the prosecutor's word choice was perhaps overly dramatic, we find that the prosecutor's argument was fair when viewed in the context of the closing argument made by defense counsel. Specifically, defense counsel suggested that L.H. should have fought off McCray and escaped his dorm room.

In addition, we note that McCray's attorney had theorized in his closing argument that L.H. had consented to a sexual encounter with his client and had made up the story about being sexually assaulted. Specifically, defense counsel argued:

> "Ladies and Gentlemen, this wasn't rape. This was regret. She went out, she had sex with [McCray], went back to [another male student's dorm room], tried to sneak out. She had to make up a story to see-try to save, whatever she could with [the other male student], and she came up with rape."

7

When viewed in context, then, we find the prosecutor's rebuttal argument was a fair attack on the theory of defense as well as on defense counsel's specific arguments. Accordingly, we also find that the prosecutor's argument was not intended to personally denigrate McCray or his attorney, as suggested by McCray. See *State v. Crum*, 286 Kan. 145, 150, 184 P.3d 222 (2008).

Notably in this regard, we find it significant that, after responding to defense counsel's argument, the prosecutor also, appropriately, reminded the jury:

> "It comes down to, you judge the credibility of the witnesses you heard. You're the sole . . . judges of that credibility and the weight of that evidence.

> "The State trusts that you're going to do that. You took that oath. And we would ask, based on evidence that is beyond a reasonable doubt, sexual intercourse occurred. That sexual intercourse occurred without consent of [L.H.]."

In summary, having reviewed the State's closing arguments in the context in which they were made, we find that they were based on the evidence presented to the jury and the reasonable inferences drawn therefrom and that they were responsive to arguments made by opposing counsel. Therefore, we find that the prosecutor's statements did not stray outside the wide latitude afforded to the State during closing arguments. Consequently, we find no prosecutorial error.

Finally, even if one or more of the prosecutor's arguments were considered erroneous, we do not find that they had an impact on the outcome of the trial. Rather, the record reveals that the district court properly instructed the jury as to the State's burden of proof, that the case must be decided only on the evidence admitted at trial, and that the arguments of counsel are not evidence. Furthermore, the record reveals that the jury took its role seriously in weighing the evidence and acquitted McCray of rape and aggravated criminal sodomy.

Significantly, we find that most of the statements made by the prosecutor that are challenged by McCray related to the charges on which he was acquitted rather than upon the charge of conviction. We also find that the jury based its verdict on the evidence and not on the arguments of counsel. Thus, we conclude that there is no reasonable possibility that any of the alleged errors contributed to the verdict or prejudiced McCray's right to a fair trial.

Affirmed.