(42 P.3d 742)

No. 86,018

STATE OF KANSAS, *Appellee*, v. BILLIE J. SPICER, *Appellant*.

Opinion filed March 8, 2002.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Kevin M. Hill*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, C.J., BEIER, J., and WAHL, S.J.

RULON, C.J.: Defendant Billie J. Spicer appeals his jury convictions of aggravated battery and driving while suspended, arguing (1) the prosecutor committed misconduct during opening statements, (2) the district court erred in failing to instruct on voluntary intoxication, and (3) the imposition of an upward durational departure sentence is unconstitutional. We affirm the convictions, vacate the sentences and remand for resentencing.

On July 28, 1999, the defendant was returning home from work and stopped by Rosie's Cantina, a local bar where his mother worked. Defendant ordered a beer and met with his mother and his girlfriend, Jennifer Gentry.

Gentry and the defendant's mother had been looking for a new place to live during the day. Finding a trailer house that they wished to show the defendant, the three of them left the bar at approximately 5:30 p.m.

The three returned to the bar that evening. The defendant's mother stayed only a short time before going home to watch a program, but she returned later in the evening. The defendant and Gentry also left the bar briefly during the course of the evening. However, they both returned and consumed various amounts of alcohol throughout the evening.

When Gentry and the defendant prepared to leave the bar shortly before closing, the defendant was intoxicated and needed some assistance getting to Gentry's car. Gentry had stopped drinking approximately 2 hours before leaving.

According to Gentry, shortly after they left the bar, the defendant began to insist upon driving. Gentry refused, believing defendant to be too intoxicated to drive. Consequently, the defendant threw the transmission into park, pulled the keys out of the ignition, and threatened to throw the keys into a field if Gentry did not allow defendant to drive. Eventually, Gentry conceded to the defendant's demands. The defendant began to speed the car down the highway and refused to slow down as requested by Gentry. Fearing the defendant would wreck the car, Gentry climbed into the back seat. Moments later, the car failed to make a bend in the road and slammed into a utility pole.

The defendant's factual version of the events preceding the crash differs from Gentry's version of the facts. Defendant claims that as Gentry and he left the bar, Gentry hounded him with questions concerning his fidelity to her. The defendant became irritated and told Gentry to move back to Lawrence because he did not want to deal with Gentry's accusations. In response, Gentry supposedly floored the accelerator and threatened to kill both of them. The defendant tried to calm Gentry and slow down the vehicle. When Gentry did, the defendant threw the car into park, took the keys out of the ignition, and demanded to drive. As the defendant drove, he claims Gentry renewed the argument. The next thing the defendant recalled was seeing the pole right before the crash.

As the car hit the pole, Gentry was thrown forward and the seatbelt ripped off her right arm. Gentry was the first to regain consciousness after the crash and realized that her arm was missing when she attempted to exit the vehicle. Gentry tried to honk the car horn, but it would not operate, so she began to walk to seek assistance. The defendant could not move because his pelvis had broken in the crash.

A neighbor, who was investigating the loss of power to his home, stopped to assist the defendant and Gentry.

After an investigation, the State charged the defendant with recklessly causing an aggravated battery of Gentry, in violation of K.S.A. 21-3414(a)(2)(A), and driving while suspended, in violation of K.S.A. 2000 Supp. 8-262. The jury convicted the defendant of the lesser included offense of reckless aggravated battery, K.S.A.

21-3414(a)(2)(B), and convicted the defendant of driving while suspended.

### Prosecutorial Misconduct

The defendant challenges certain comments made by the prosecutor during opening statements. The defendant claims the jury was prejudiced before the evidence was produced which, consequently, tainted the jurors' perception of the later testimony.

No contemporaneous objection to the prosecutor's opening statements was lodged by the defendant at the time of trial. Generally, this court will not consider an issue on appeal that was not properly raised before the district court. See *State v. Cravatt*, 267 Kan. 314, 331, 979 P.2d 679 (1999). However, where prosecutorial misconduct likely caused such prejudice to form in the minds of the jurors that the defendant was unable to obtain a fair trial, Kansas courts have implemented a plain error standard of review. See *State v. Sperry*, 267 Kan. 287, 308-09, 978 P.2d 933 (1999).

Where plain error is alleged, review of prosecutorial misconduct consists of a two-part analysis. See *State v. Pabst*, 268 Kan. 501, 504-05, 996 P.2d 321 (2000). Under the first part, the reviewing court must determine whether the prosecutorial remarks went beyond the permissible bounds of examination or argument, remaining cognizant of the wide latitude permitted prosecutors in arguing reasonable inferences based upon the evidence. See *State v. Maybin*, 27 Kan. App. 2d 189, 197, 2 P.3d 179 (2000). Once the reviewing court has concluded the prosecutor's statements have exceeded the permissible scope of examination or argument, the court is required to determine whether the statements, when viewed in light of the record as a whole, are so gross and flagrant as to prejudice the jury against the defendant. Such statements are deemed harmless, however, if the reviewing court is convinced that the prejudicial statements had little, if any, likelihood of changing the result of the trial. See *Maybin*, 27 Kan. App. 2d at 197-98.

Here, the defendant contends the prosecution's opening statements repeatedly characterized the defendant as a liar, invading the province of the jury to determine credibility and prejudicing the jury's perception of the evidence.

In material part, the challenged prosecutor's comments are as follows:

"The defendant's reckless stupid act of driving a car while under the influence of alcohol, which resulted in Jennifer Gentry's arm being torn from her body, is why we are here today.

. . . .

". . . And when you look at the three versions that the defendant gave, I think you'll see a common pattern here and that is the defendant lied to law enforcement to avoid the trouble that he knows he would be in for driving drunk and causing the type of injuries that you'll see through the testimony.

"Any time the focus was on him he tried to divert the focus to the victim in this matter; but each time he was rebutted both with statements of eyewitnesses, with the physical review of the scene by law enforcement and then finally the nail in the coffin the DNA which shows that his blood was on the driver's side air bag of the vehicle.

"Now, the lies and the attempt to shift the blame to the victim have continued with the defendant grasping at straws to avoid the unavoidable fact, and the unavoidable facts are here number one the defendant drove the vehicle at the time of the accident. Number two, he drove that vehicle in Brown County, Kansas which is required in the elements and number three, that he recklessly caused the great bodily harm or disfigurement of Jennifer Gentry.

. . . .

"Now, what will the defendant try next? Well, he's recently hinted that the victim may have somehow kicked the steering wheel causing him to lose control of the vehicle. A fact that the defendant later acknowledged was not true to Randy Linck when he stated to Officer Linck that if she had kicked it it didn't cause the accident.

". . . You'll know that it's another attempt by the defendant to avoid the inevitable and that is that he is guilty of recklessly causing great bodily injury.

"In summary ladies and gentlemen I think it will be clear to you when you wade through the smoke and mirrors of the defendant's lies and look at the bare facts of this case that you'll be convinced that the legal elements of aggravated battery are present and that is that the defendant recklessly caused great bodily harm by driving intoxicated. By driving under the influence and caused that great bodily harm or disfigurement to another person."

The prosecution's characterization of the act of driving while intoxicated as "stupid," while not eloquent, cannot form the basis for prosecutorial misconduct. Because the defendant faced criminal liability if the jury convicted him of recklessly causing injury to his passenger while driving under the influence of alcohol, it caused no prejudice to the defendant to label such conduct as "stupid."

According to the defendant's own testimony, he now wishes he had chosen another course of action. Calling into question the wisdom of the actions of the defendant which provide the basis for criminal liability does not shift the burden of proof to the defendant or undermine the credibility of any of the parties. The statement is well within the broad discretion of the prosecutor to comment upon the evidence.

However, the prosecution's comments thereafter grossly cross the line separating persuasive argument upon the inferences to be drawn from the evidence adduced at trial and impermissible character attacks upon the credibility of the defendant. Unquestionably, a prosecutor may properly address inconsistencies within the defendant's version or versions of the facts. The prosecutor may properly suggest fallacies in the defendant's attempts to provide legitimate bases for the inconsistencies. In short, the prosecution may argue that the jury should arrive at a single finding of fact based upon the state of the evidence, but the prosecution may not comment about the defendant's credibility. See *State v. Hutcherson*, 25 Kan. App. 2d 501, 506, 968 P.2d 1109 (1998). A determination of a party's or a witness' credibility lies solely within the province of the jury. *State v. Manning*, 270 Kan. 674, 701, 19 P.3d 84 (2001).

We firmly conclude the prosecutor made grossly improper comments about the defendant's credibility during opening statements. Such is improper argument, especially during opening statements when the jury has not yet been exposed to evidence untainted by comments by the respective parties.

A determination the prosecution's opening statements contained improper argument does not demand a reversal of the defendant's convictions, if the misconduct did not affect the outcome of the trial. See *Maybin*, 27 Kan. App. 2d at 197-98.

Here, the jury was asked to consider whether the defendant's recklessness caused great bodily injury or disfigurement to the victim. The trial testimony overwhelmingly demonstrated the defendant drove a vehicle while under the influence of alcohol and drove the vehicle at a speed greater than conditions warranted. The defendant does not deny he was driving the vehicle, that he was un-

able to maintain control of the vehicle, and that the resulting crash partially dismembered the victim.

The physical evidence obtained from the crash site effectively refutes any argument the vehicle was knocked off course by the victim. Although several theories were presented, the ultimate reason for the crash related to the defendant's lack of good driving judgment. As a result, the prosecution's improper comments did not affect the jury's finding that the defendant's recklessness caused the victim's injuries. Reversible error is not predicated upon the prosecutor's misconduct in this case. However, we strongly disapprove of the prosecutor's conduct during opening statements.

## Failure to Instruct on Voluntary Intoxication

Next, the defendant claims he should be granted a new trial due to the district court's refusal to instruct the jury on the defense of voluntary intoxication. As the defendant concedes, this instruction was not requested by him. This court reviews the district court's decision for clear error. See *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

The defense of voluntary intoxication may be used only where the charged offense requires a specific intent. See *State v. Johnson*, 258 Kan. 475, 485, 905 P.2d 94 (1995). The defendant argues that recklessness, as used in the aggravated battery statute, requires an appreciation of the dangers associated with particular conduct. As such, the defendant claims that voluntary intoxication may be used to vitiate the reckless element of the charge if the intoxication made the defendant unaware of the dangers posed by his conduct.

In *State v. Esher*, 22 Kan. App. 2d 779, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996), this court considered whether the sections of the aggravated battery statute requiring intent were specific intent crimes for purposes of determining the applicability of a voluntary intoxication defense. The applicable statute under our consideration defined aggravated battery as "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 21-3414. Concluding the intent element of the stat-

ute to be merely a general intent requirement, this court held that voluntary intoxication was not an available defense to the offense as charged. *Esher*, 22 Kan. App. 2d at 786.

General intent is a state of mind in which a person is conscious of the act he or she is committing without necessarily understanding the consequences of that action, yet voluntary intoxication provides no defense for the commission of a prohibited act requiring only general intent. See *State v. Sterling*, 235 Kan. 526, 527-28, 680 P.2d 301 (1984).

Specific intent requires a demonstration of a greater culpable mental state than mere recklessness or negligence. See *State v. Robinson*, 256 Kan. 133, 137, 883 P.2d 764 (1994). K.S.A. 21-3201 provides that general intent may be proven by demonstrating intentional or reckless conduct. Just as the "intentional" element of intentional aggravated battery merely articulates the general intent requirement, the "reckless" element of reckless aggravated battery merely articulates the general intent requirement. See *Esher*, 22 Kan. App. 2d at 785-86.

The reckless requirement of the charged offense, here, does not require any specific state of mind to commit an offense. Rather, the statute merely requires a person to take an unjustifiable risk which results in a harmful touching to the person of another. In other words, the harm to another need not be intentional, in the sense the offender intended physical contact with the other person but included accidental physical contact which harms the person, although the harm may not be intended. "Recklessness" does not transform aggravated battery from a general intent crime into a specific intent crime. Clearly, an instruction on the defense of voluntary intoxication was not warranted here. See *Davis v. State*, 522 A.2d 342, 344-45 (Del. Supr. 1987) (discussing, in depth, the court's earlier holding in *Wyant v. State*, 519 A.2d 649 [Del. Supr. 1986], which provided that voluntary intoxication is no defense to intentional or reckless conduct, unless the offense proscribed requires specific intent). This issue has no legal merit.

## The Upward Departure Sentence

The defendant's final issue on appeal concerns the legality of his departure sentence. The district court ordered an upward dura-

tional departure sentence of 38 months for the base offense of aggravated battery, although 18 months is the standard sentence for the defendant's offense.

Based upon our Supreme Court's ruling in *State v. Gould*, 271 Kan. 394, Syl. ¶ 3, 23 P.3d 801 (2001), the statutory scheme for imposing upward durational departures is unconstitutional on its face. Consequently, the imposition of an upward durational departure sentence was illegal.

The State argues this issue is moot because the sentencing court, on its own initiative, amended the journal entry to correct the illegal sentence.

A district court loses jurisdiction to hear any motions to modify a sentence when a timely notice of appeal has been filed. See *State v. Williams*, 235 Kan. 485, 495, 681 P.2d 660 (1984) (citing *State v. Dedman*, 230 Kan. 793, 640 P.2d 1266 [1982], for the proposition that the proper procedure for correcting an illegal sentence following a notice of appeal is to await the mandate from the appellate court or to file a motion for the appellate court to issue a temporary remand for modification of the sentence).

The sentencing court properly followed the holding of our Supreme Court but was without jurisdiction to correct the sentence while an appeal was pending in this court. This issue is not moot, and the case must be remanded for resentencing.

We affirm the convictions, vacate the sentences, and remand for resentencing.