NOT DESIGNATED FOR PUBLICATION

No. 116,925

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN JOE MCDONALD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kingman District Court; LARRY T. SOLOMON, judge. Opinion filed August 24, 2018. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, *Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: A jury convicted Steven Joe McDonald of aggravated indecent liberties with a child. The trial centered on the credibility of the witnesses' testimony. McDonald argues the prosecutor committed prosecutorial error by making inappropriate comments about witness credibility at three different stages of the trial. Additionally, McDonald argues his sentence was erroneous because he was granted a departure to a grid sentence but was also sentenced to lifetime parole. We agree that prosecutorial error tainted the jury verdict and therefore reverse and remand for a new trial.

1

On May 11, 2015, V.H. was looking over her father's (Father) shoulder as he was looking at pictures on his phone. V.H. asked about a certain man in one of the photographs—the man was McDonald. Father referred to the man as "Uncle Steve," and V.H. inquired about the man being her uncle. Father referred to McDonald as Uncle Steve even though he was not biologically related to the family. V.H. then told Father that she did not want to go to an upcoming gathering at the residence of a family friend if McDonald would be at the gathering.

When Father asked why she did not want to go, V.H. told him that at a previous gathering, which occurred on July 20, 2014, McDonald looked down her swimsuit while she was in the pool. Additionally, V.H. stated that she had gone into the house with McDonald. In one specific room of the house, McDonald told V.H. to lay down on the bed and take off her swimsuit. V.H. said that McDonald then kissed her privates and made V.H. kiss his privates. At the time the incident occurred, V.H. was 7 years old and McDonald was 37 years old.

Father told his wife (Mother) what V.H. had said about McDonald's actions. Mother made an appointment for V.H. to be examined by a physician's assistant. At the appointment, V.H. confirmed some details to the physician's assistant but stated that she did not touch McDonald's penis. The physician's assistant contacted police, who in turn obtained the assistance of a social worker. In an interview with the social worker, V.H. repeated the basic story she had told Father. Specifically, V.H. stated that inside the house McDonald made her lie down on a bed and take off her pants. He then sucked on her privates. McDonald asked V.H. to suck on his privates, but V.H. refused.

Based upon this investigation, the State charged McDonald with one count of aggravated indecent liberties with a child under K.S.A. 2014 Supp. 21-5506(b)(3)(A).

During the subsequent jury trial, the primary focus was the credibility of V.H., McDonald, and the other witnesses.

Concerning V.H.'s credibility, at a preliminary hearing she testified that she had licked McDonald's penis, and then spit something into a trashcan. During her testimony at trial, V.H. testified consistently with her statement from the preliminary hearing. Testifying in his own behalf, at trial McDonald denied any inappropriate touching.

The jury convicted McDonald of aggravated indecent liberties with a child. Under Jessica's Law, McDonald was facing a life sentence with the possibility of parole after 25 years. Initially, the district court granted a downward durational departure to a life sentence with minimum of 12 1/2 years in prison with lifetime parole and electronic monitoring. Based upon McDonald's argument, the district court determined under K.S.A. 2017 Supp. 21-6627(d)(1) that it could depart to a grid sentence. The district court granted this departure and ultimately sentenced McDonald to a 59-month prison sentence. The district court found the crime was sexually motivated but not sexually violent. The record of the sentencing hearing contains no reference to postrelease supervision. But in the journal entry of sentencing, the district court indicated that it imposed both lifetime parole/electronic monitoring and lifetime postrelease supervision.

McDonald filed a timely notice of appeal from his conviction and sentence.

ANALYSIS

*Alleged prosecutorial error*

McDonald argues the prosecutor committed prosecutorial error at three separate times during the trial. Specifically, McDonald argues the prosecutor inappropriately commented upon the credibility of the witnesses during opening statements, in one

3

statement during cross-examination of a defense witness, and in closing arguments. The general rules applicable to a claim of prosecutorial misconduct will be addressed first. An analysis of McDonald's claims of error will follow.

Recently, our Supreme Court modified the manner in which we are to evaluate claims of prosecutorial error. Under the previous test, we analyzed various factors to determine whether prosecutorial misconduct had occurred. The new test, adopted in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), simplified the process. The court distinguished between prosecutorial misconduct and prosecutorial error. 305 Kan. at 108-09.

The *Sherman* court set out a two-part test to determine if there is reversible prosecutorial error in a given case. First, the reviewing court determines if the prosecutor erred. A prosecutor errs if he or she acts outside the wide discretion afforded to him or her to prosecute a case. Second, if a prosecutor has erred, then the reviewing court determines if the error is reversible. 305 Kan. at 109. For the reversibility inquiry, we apply the constitutional harmlessness test set out in *Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this test, an error is harmless if the State proves "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.* where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]). The core principle underlying both of these tests is whether the defendant's right to a fair trial has been violated. *Sherman*, 305 Kan. at 110-11.

Turning to the inquiry of whether the prosecutor acted outside of his or her wide discretion, McDonald argues the prosecutor inappropriately commented upon the credibility of the witnesses. Kansas courts recognize that a prosecutor providing a personal opinion on the credibility of a witness is an action outside the wide discretion of

4

the prosecutor. See e.g., *State v. Pribble*, 304 Kan. 824, 835, 375 P.3d 966 (2016). This is an erroneous action because it, in effect, takes the credibility determination away from the jury because such comments endorse witness credibility. See *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 (2011). A prosecutor's statement of his or her personal belief on the credibility of a witness is in essence a form of "unsworn, unchecked testimony, not commentary on the evidence of the case." (Emphasis omitted.) *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000).

While statements about personal belief are prohibited, the prosecutor may make statements to the jury that relate to what evidence a juror should use in assessing the credibility of witnesses. *State v. Scaife*, 286 Kan. 614, 623-24, 186 P.3d 755 (2008). A prosecutor is allowed to advocate to the jury by presenting reasonable inferences from the evidence to argue that a story is either believable or unbelievable. *State v. Hart*, 297 Kan. 494, 505-06, 301 P.3d 1279 (2013). Ultimately, there is a difference between statements of personal belief, which are inappropriate, and statements based on reasonable inferences from the evidence, which are permitted.

*The prosecutor's opening statement*

The first statement that McDonald alleges was inappropriate was made during the prosecutor's opening statement. While this is analyzed as one statement, the challenge arises from two separate comments made during the prosecutor's opening statement. Specifically McDonald challenges the prosecutor's comment in reference to conflicting testimony the jury would hear: "You'll hear that [V.H.] didn't report this. Actually, when [McDonald] was done, you'll hear some—will be argued as conflicting testimony, but *what I will submit is a young girl who's embarrassed about something that happened to her and is afraid*, [McDonald], after he was done putting his mouth on this child's vagina, told her to put his penis in her mouth." (Emphasis added.) In concluding the opening statement, the prosecutor said:

5

"Folks, there isn't a smoking gun here. I'm not going to show you video and provide you with DNA evidence. I'm going to provide you with witnesses. Main witness is going to be [V.H.]. She's going to tell you what happened. And it will be up to you to judge her credibility. There will be some testimony about the initial disclosure being different from a later disclosure. [V.H.] initially denied that she'd put the defendant's penis in her mouth. She said he asked her to but she didn't. And later she said, yes, I actually did. *And I want you to keep in mind when you hear that kind of testimony that you're listening to a young girl talk about something that she—she isn't proud of. She doesn't like to talk about it.* I think it will be obvious when you hear from her that she doesn't want to be here today, folks. So I would ask for your attention. I would ask for you to listen to the evidence. And I thank you for your time." (Emphasis added.)

McDonald argues the italicized portions of these statements were erroneous. The alleged error is not entirely clear because there is no comment in which the prosecutor is vouching for the credibility of V.H. McDonald vaguely argues that this statement was erroneous because the prosecutor knew that the case was a "he said/she said case [that] was all about credibility."

Through these comments in opening statements, the prosecutor was telling the jury what to look for in assessing V.H.'s credibility. It is permissible for a prosecutor to inform the jury what evidence it should use to assess the credibility of a witness. See *State v. Spicer*, 30 Kan. App. 2d 317, 320-22, 42 P.3d 742 (2002) (finding certain statements crossed the line separating permissible persuasive argument from inferences based on evidence into impermissible character attacks upon defendant). Further, the prosecutor in McDonald's trial specifically reminded the jurors that it was their job to determine credibility prior to making the allegedly erroneous statements. These comments, in context, show that the prosecutor was informing the jury what aspects of the testimony to focus on in order to determine witness credibility.

6

The language used in these opening statements is similar to the language used in an unpublished opinion of this court, *State v. Jowers*, No. 88,798, 2004 WL 292078, at *1-2 (Kan. App. 2004) (unpublished opinion). In the opening statement of the trial at issue in *Jowers*, the prosecutor stated:

> "'[L]adies and gentlemen of the jury, January 28th, 2001, what were you doing on that day? I'll give you a hint. It was Super Bowl Sunday. The Baltimore Ravens beat the New York Giants in the Super Bowl. Do you remember who you watched the game with or what you had to eat on that date? Today you will hear the testimony of an eight year old girl, [T.J.], as she recounts for you what happened to her nearly a year ago today. And as she does so, I would ask you to remember how hard it is for all of you to remember the details of what you did last year at Super Bowl and how much harder it must be for a[n] eight year old girl to get up in front of all of us and tell us what happened to her.'" 2004 WL 292078, at *1.

A panel of this court deemed these statements were within the discretion afforded to prosecutors to conduct their case. Similar to our case, the comments made were not about the credibility of the victim, rather they were directed toward the potential difficulty in remembering events and testifying. See 2004 WL 292078, at *1. Here, the prosecutor did not make inappropriate comments about the credibility of V.H. during his opening statements. The statements are within the wide latitude afforded to prosecutors. Because there is no error, there is no reason to consider reversibility in respect to these comments.

*Comments made during cross-examination*

The second challenge McDonald raises contests comments made by the prosecution during cross-examination of a defense witness. During a line of questioning about the witness' relationship with McDonald, the prosecutor asked whether the witness had discussed the case with McDonald. The prosecutor asked whether the witness had

7

advised McDonald to obtain an attorney, and defense counsel objected. The district court permitted the witness to answer the question. Following this answer the following exchange occurred:

"Q. Okay. And the Investigator Cooke, in fact, tried to get you to help in the investigation?

"A. He asked me for a statement.

"Q. Did he ask you to make a controlled phone call for him to Steve and talk about the incident?

"A. Yes, he did.

"Q. Did you do that?

"A. No, I did not.

"MR. ARIAGNO: To which I'll object. It's again—I don't know what the relevance is.

"THE COURT: Mr. Ricke?

"MR. RICKE: Your Honor, *it goes to the bias of this witness, that he chose his buddy of a long time over believing this child.*

"THE COURT: Well, overrule the objection. It's relevant."

During redirect, McDonald's counsel asked the witness about his wife being the victim of molestation, and the prosecution objected. In discussing the objection, defense counsel argued, "Mr. Ricke clearly asked the question about him taking to his friend over believing the child, so I think that is a credibility—." Following that exchange the district court continued to discuss the issue outside the presence of the jury and commented that it was improper to have the witness testify whether he believed the claims of the victim.

On appeal, McDonald argues the statement, "it goes to the bias of the witness, that he chose his buddy of a long time over believing this child," was an erroneous commentary upon the credibility of both the witness testifying and V.H. This statement by the prosecutor was not a claim directly vouching for the credibility of V.H. or the lack of credibility of the witness. The prosecutor was responding to McDonald's objection at

8

the direction of the district court. Appellate courts do not consider a potentially erroneous statement in isolation; rather, this court must consider the statement in the context in which it was made. *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017). Certainly stating, "it goes to the bias of the witness" is a permissible statement. This does not provide a personal opinion of the prosecutor about the credibility of witnesses; rather this statement is asserting the evidentiary basis for the question the prosecutor had asked.

The statement that followed "that he chose his buddy of a long time over believing this child," comes very close to being an impermissible statement. The witness would not be permitted to directly testify about the credibility of V.H. See *State v. Crum*, 286 Kan. 145, 151-52, 184 P.3d 222 (2008). The context of the statement is important in determining if it was error. The prosecutor was not making a claim that the witness in fact chose to believe McDonald over V.H.; rather, the prosecutor was describing the relevance of the testimony and why the answer would allow the jury to infer that the witness was biased. In responding the objection, the prosecutor was making an argument and not making a comment about his personal belief about the witnesses' credibility.

McDonald does not show how the argument was impermissible. A prosecutor may argue about credibility based upon reasonable inferences from admitted evidence and testimony. *Scaife*, 286 Kan. at 623-24. Bias is an issue that affects credibility of a witness. See *State v. Wilkerson*, 278 Kan. 147, 157-58, 91 P.3d 1181 (2004). From the evidence that the witness did not engage in a controlled call with the police, the prosecutor was within their discretion to make an argument that the witness had a bias toward the defendant. Although it would have been better practice to make this argument outside of the presence of the jury, we believe the prosecutor did not act outside of the wide discretion afforded to prosecutors.

*Comments made during closing arguments*

The final portion of McDonald's challenge is that the prosecutor erred during closing arguments. During rebuttal, the State concluded its closing argument by stating, "Folks, the defendant would have you to believe that this little girl made it all up. That's a decision you've got to make. *She's telling you the truth*. I would ask you to find the defendant guilty."

In contrast to the statements challenged above, in this statement the prosecutor is directly commenting on V.H.'s credibility. This is not a reasonable inference from admitted evidence; rather, the prosecutor is stating his personal belief about the veracity of V.H.'s testimony. A prosecutor acts outside of the wide latitude afforded to him or her by asserting his or her personal opinion about the credibility of witnesses. *Pribble*, 304 Kan. at 835.

On appeal, the State argues that this was an appropriate summation because a single personal opinion should not be considered in isolation, but rather viewed in the context of all the prosecutor's remarks. The State contends that other comments, including the remark, "[t]hat's a decision you've got to make," in referring to the defense contention that V.H. made her story up, attenuated any harm done by the offending language.

Comments similar to the prosecutor's claim that V.H. was telling the truth have been found to not be erroneous when they are used a summation to the jury. See *State v. Mireles*, 297 Kan. 339, 368-69, 301 P.3d 677 (2013). But the statement by the prosecutor here is distinguishable from other summation statements in the caselaw.

In order for a summation statement to be appropriate, the prosecutor must be making a claim that the evidence shows a witness is telling the truth or is otherwise

10

believable. *State v. Peppers*, 294 Kan. 377, 399-400, 276 P.3d 148 (2012). Without a statement concerning the evidence showing the truth of testimony, a statement about a witness telling the truth is prosecutorial error. See *State v. Ochs*, 297 Kan. 1094, 1100-01, 306 P.3d 294 (2013) (finding error when "[t]he prosecutor's comments were not an invitation for the jury to consider the evidence. Instead they were a prosecutorial declaration that the State's most important witness—the victim—was telling the truth."). Making a declaration that a victim is telling the truth is substantially different from arguing as a summation that the evidence shows the victim provided truthful testimony. The former is error, and the latter is permissible.

Here, the prosecutor did not just make a statement that the evidence showed V.H. was telling the truth; rather, the prosecutor made a comment that stemmed from personal belief about the truthfulness of V.H.'s testimony. A prosecutor's claim to ownership of "the truth" is an erroneous statement. See *State v. Elnicki*, 279 Kan. 47, 59-60, 105 P.3d 1222 (2005) (holding prosecutor commenting that "the truth shows you beyond a reasonable doubt the defendant is guilty," was erroneous). By stating that V.H. was telling the jury the truth, the prosecutor was making a claim of possession of the truth. The statement was error.

Turning to the question of reversibility, when we determine that error is present we must reverse the conviction unless the State convinces this court beyond a reasonable doubt that the error did not affect the outcome of the trial, meaning there was no reasonable probability that the error affected the outcome. In making this determination, we review the entirety of the record. *Sherman*, 305 Kan. at 109. Our Supreme Court has instructed this court to "simply consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden." 305 Kan. at 111. The primary focus of this analysis must be concerned with McDonald's right to a fair trial. 305 Kan. at 110-11.

11

McDonald argues that the error was prejudicial because the case was entirely about the credibility issue between the conflicting positions rather than a case of overwhelming evidence. Additionally, McDonald argues the comments were prejudicial because the jury requested transcripts of V.H. and the witness that was cross-examined. McDonald argues this shows prejudice because "[c]learly the jury was weighing the testimony of the very witnesses the State had impermissibly commented on."

The State argues that the prejudicial effect of any error was mitigated by the jury instruction that the jury was to determine the weight and credibility of the witnesses' testimony. Additionally, the State argues the prosecutor repeatedly informing the jury it was the jury's duty to determine credibility mitigates any prejudicial effect. While the jury instructions are relevant to whether the error is harmless, they alone are not able to show beyond a reasonable doubt that this error did not affect the outcome. See e.g., *State v. Huddleston*, 298 Kan. 941, 956, 318 P.3d 140 (2014). Under the State's theory, almost every instance of prosecutorial error would be harmless as long as the jury is instructed that statements of counsel are not evidence.

We will address McDonald's second claim of prejudice first. If his contention is correct and the jury was weighing the credibility of the witnesses, then the prosecutor's statements were not prejudicial. The potential violation of McDonald's fair trial rights comes from the prosecutor infringing on the jury's obligation to weigh the credibility of the witnesses and the evidence. The State is correct that the jury weighing the credibility of the witnesses tends to show that the right to a fair trial was not violated. While McDonald's argument that he was prejudiced because the jury weighed the credibility of the witnesses is unpersuasive, we must still address whether the comment that V.H. was telling the truth affected the outcome in light of the credibility questions presented at trial.

12

Turning to McDonald's more general claim that prejudice exists due to the nature of the case and evidence, there is little relevant caselaw applying the *Sherman* analysis to similar facts. In, a recent unpublished case, a panel of this court concluded that statements regarding witness credibility during closing arguments were not reversible error. *State v. Ambris-Morales*, No. 114,514, 2017 WL 1822556 at *5-7 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 988 (2017). In *Ambris-Morales*, the panel found that comments about the victim's consistency in telling her story was an erroneous statement but harmless. The statement was harmless because both the prosecution and defense discussed with the jury what to consider in assessing credibility. 2017 WL 1822556, at *7. The weight of the comments in *Ambris-Morales* are similar to, and yet different from, our present case. On one hand, both the prosecution and defense discussed in length the factors the jury should consider in making a credibility determination. On the other hand, the statement did not add anything to the jury's calculus because the evidence about credibility was contained in the testimony. Here, the prosecutor's statement introduces new information to the jury that exists outside the evidence—the prosecutor's endorsement of the victim's testimony. The prosecutor's statement that V.H. was telling the truth is more likely to influence the jury's verdict than the statements contained in *Ambris-Morales*.

Additionally, a panel of this court found statements similar to the prosecutor's statements in this case to be reversible error. Using factors that have since been disapproved of by *Sherman*, the panel in *State v. Lockhart*, 24 Kan. App. 2d 488, 492, 947 P.2d 461 (1997), held that a prosecutor stating the defendant and the defendant's counsel were liars was erroneous. The error was determined to be reversible because the court was not convinced beyond a reasonable doubt that the error did not affect the verdict. The primary reason that the error was reversible was that the central issue of the trial was the credibility of the defendant against the credibility of a police officer. 24 Kan. App. 2d at 492-93.

13

Here, we have a similar scenario. Ultimately, the jury had to decide who was telling the truth between the testimony of V.H. and McDonald, meaning the jury was determining which testimony was more credible. Similar to the prejudicial effect of stating that the defendant was not telling the truth which our court found compelling in *Lockhart*, we conclude it is entirely possible that the prosecutor's personal endorsement of V.H.'s truthtelling had an effect upon the outcome of the trial in this case.

In *Ochs*, the prosecutor erred by stating that the victim had the protection of the truth. 297 Kan. at 1100-01. The trial in *Ochs* involved a similar credibility question. The case involved a young victim who provided inconsistent testimony. In analyzing whether the erroneous statement about the victim having the protection of the truth was reversible, our Supreme Court relied on two factors to determine the error was harmless. First, the victim's inconsistent testimony did not involve the details of the alleged crime but rather ancillary matters. Second, DNA evidence supported a conviction. 297 Kan. at 1105. Under the analysis required by *Sherman*, while the weight of the evidence "may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry." 305 Kan. at 111.

Looking at the holding in *Ochs* in light of the holding in *Sherman*, we must focus upon the relative inconsistencies in the statements of the victims. In *Ochs*, the inconsistencies did not involve the alleged crime; here, V.H. was inconsistent about whether she had put her mouth on McDonald's penis. This difference distinguishes *Ochs* from the present case and amplifies any potential that the prosecutor's statements affected the outcome of the trial. The ultimate question at trial was whether the jury believed V.H.'s allegations even though at different times she provided a different series of events. We conclude there is a reasonable possibility that the prosecutor's statement that V.H. was telling the truth influenced the jury's decision because the crux of the trial was the question of whether V.H.'s testimony was truthful.

14

The weight of the evidence supports this conclusion as well. Outside of V.H.'s statements that McDonald had inappropriately touched her, there is no direct evidence. Further, the testimony of Father, Mother, the police officer, the physician's assistant, and the social worker are all based upon what V.H. had told them. The lack of substantial corroborating evidence increases the prejudicial effect of the prosecutor's comments about V.H. telling the truth. Because it is reasonably possible that the error could affect the result of the trial, the State has not proven beyond a reasonable doubt that the error did not affect the outcome of the trial. The prosecutorial error requires reversal of McDonald's conviction, and a remand for a new trial.

*Error in sentencing*

The second issue on appeal is whether the district court sentenced McDonald to an illegal sentence. Although this issue is rendered moot by our decision to reverse McDonald's conviction and remand the case for a new trial, in the interest of completeness we will briefly address the issue.

The legality of a sentence may be challenged at any time. K.S.A. 2017 Supp. 22-3504(1). We have unlimited review of whether a sentence is illegal. *State v. McNeal*, 292 Kan. 625, 630, 258 P.3d 365 (2011). McDonald argues that his sentence is illegal because he was sentenced to lifetime parole. The State concedes that McDonald's sentence is erroneous in this respect.

The district court granted McDonald a departure to a determinate sentence under K.S.A. 2014 Supp. 21-6627(d)(1). From the record at sentencing, it is not clear if the district court actually ordered lifetime parole and electronic monitoring after it granted the departure. Initially the district court was going to reduce McDonald's indeterminate life sentence but later imposed a determinate sentence. Lifetime parole is not applicable to a determinate sentence. Parole applies to an indeterminate sentence and postrelease

15

supervision applies to a determinate sentence. See *State v. Ballard*, 289 Kan. 1000, 1014, 218 P.3d 432 (2009). Because the district court departed from an indeterminate sentence to a determinate sentence, under those circumstances it would be error for McDonald to be subject to parole.

Reversed and remanded for a new trial.