NOT DESIGNATED FOR PUBLICATION

No. 114,778

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

DARRELL L. WILLIAMS,
*Appellee/Cross-appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion on remand filed February 1, 2019. Affirmed.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee/cross-appellant.


Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.


PER CURIAM: This case comes before us on an order of partial remand from the Kansas Supreme Court. See *State v. Williams*, No. 114,778, 2017 WL 4558234 (Kan. App. 2017) (unpublished opinion), *rev. granted* 309 Kan. __ (December 17, 2018). The Kansas Supreme Court summarily vacated the part of our opinion which found the district court properly classified the following crimes as person misdemeanors for sentencing: Williams' 2002 California conviction for battery of a spouse, his 2003 Nevada conviction for battery, and his 2009 Nevada conviction for domestic battery. It

1

remanded that portion of the case to us for reconsideration in light of *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). But it left intact the remainder of our decision.

*Wetrich* held that for an out-of-state conviction to be comparable to an offense under the Kansas criminal code for purposes of calculating a person's criminal-history score under the sentencing statutes, the elements of the out-of-state crime must be identical to or narrower than the elements of the referenced Kansas crime. 307 Kan. 552, Syl. ¶ 3. We note that a determination of the categorical reach of a state crime considers not only the statute's language, but also relevant statutory definitions and the interpretation of statutory elements in state judicial opinions. See *State v. Gensler*, 308 Kan. 674, 685, 423 P.3d 488 (2018) (holding that a prior municipal DUI conviction under an ordinance does not count as a prior DUI under K.S.A. 2017 Supp. 8-1567 despite identical elements where the ordinance defined "vehicle" more broadly than did the state statute and thus prohibited a broader range of conduct); *State v. Lamone*, 308 Kan. 1101, 1103-04, 427 P.3d 47 (2018) (same, citing *Gensler*.). So even when the wording of two statutes is identical, the two crimes may not be comparable. Conversely, even if the wording of two statutes is different, the two crimes may nonetheless be comparable. We examine the three misdemeanor crimes below, applying *Wetrich*'s standard.

*2002 California Battery of a Spouse*

We first address Williams' 2002 conviction in California of battery of a spouse. California defined battery as "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242 (West 2000). The punishment for battering a spouse was potential imprisonment, a potential fine, or both. Cal. Penal Code § 243(e)(1) (West 2000). California had no separate domestic battery statute.

But Kansas did. The State compares Williams' California crime of battery of a spouse to Kansas' crime of domestic battery. The Kansas crime, a person crime, was

2

defined as: "(1) Knowingly or recklessly causing bodily harm by a family or household member against a family or household member; or (2) knowingly causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner." K.S.A. 2013 Supp. 21-5414(a). Like the California statute at issue, the Kansas domestic battery statute provides for punishment by imprisonment, a fine, or both. K.S.A. 2013 Supp. 21-5414(b).

We first examine the victim element. Williams was convicted of battery of a spouse. A "spouse," as included in the California penalty section, falls within the Kansas victim category of "a family or household member," so this element is narrower.

We next examine the mental culpability element. The California statute required the acts to be "willful or unlawful," while the Kansas statute required the acts to be done "knowingly or recklessly" or "knowingly . . . when done in a rude, insulting or angry manner."

Under California law, battery is a general intent crime and "willful" merely means a willingness to commit the act:

> "'[W]hen applied to the intent with which an act is done or omitted, ["willful"] implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.'
>
> . . . .
>
> "... Battery, under California law, is a general intent crime. 'This necessarily excludes criminal liability when the force or violence is accomplished with a "lesser" state of mind, i.e., "criminal negligence." As with all general intent crimes, "the required mental state entails only an intent to do the act that causes the harm." [Citations omitted.]'" *James v. State*, 229 Cal. App. 4th 130, 137, 142, 176 Cal. Rptr. 3d 806 (2014).

3

Similarly, in Kansas, battery is a general intent crime. See K.S.A. 2013 Supp. 21-5202(i) (stating that all crimes in which the mental culpability requirement is "knowingly" are general intent crimes); *State v. Seba*, 305 Kan. 185, 212, 380 P.3d 209 (2016) (stating that when Legislature determines crime requires knowing mental state, crime is general intent crime). A general intent crime requires simply that the defendant intentionally or purposefully perform a wrongful act that causes harm. See *State v. Spicer*, 30 Kan. App. 2d 317, 323-24, 42 P.3d 742, *rev. denied* 274 Kan. 1117 (2002).

The two statutes use different language, but any "willful" act under the California statute would necessarily constitute a "knowing or reckless" act under the Kansas statute. See K.S.A. 2013 Supp. 21-5202(b) ("Culpable mental states are classified according to relative degrees, from highest to lowest, as follows: [1] Intentionally; [2] knowingly; [3] recklessly."). Proving a higher culpable mental state necessarily suffices to prove a lower culpable mental state. K.S.A. 2013 Supp. 21-5202(c). Under California law, reckless conduct alone does not constitute a sufficient basis for battery. *In re D.H.*, No. A150699, 2017 WL 6523520, at *4 (Cal. App. 2017) (unpublished opinion). In that respect its statute is narrower than the Kansas battery statute, which criminalizes certain reckless conduct. We find the California statute to be narrower than or identical to the Kansas battery statute in its required mental culpability.

Last, we examine the prohibited acts. California's element of battery requires "use of force or violence," while Kansas requires "bodily harm" or "physical contact . . . in a rude, insulting or angry manner." Although the two statutes, at first blush, appear to require different elements, closer examination shows their identical nature.

California cases establish that even a slight touching may constitute the "use of force or violence," if done in a rude or angry way.

4

"'It has long been established, both in tort and criminal law, that "the least touching" may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' 'The "violent injury" here mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another, even although [*sic*] only the feelings of such person are injured by the act.' Thus, '[a]ny harmful or offensive touching constitutes an unlawful use of force or violence' for purposes of Penal Code section 242. 'Even a slight touching may constitute a battery, "if it is done in a rude or angry way." [Citations omitted.]'" *James*, 229 Cal. App. 4th at 137-38.

The same is true of the Kansas domestic battery statute, which criminalizes physical contact done in a rude, insulting, or angry manner. See K.S.A. 2013 Supp. 21-5414(a)(2).

Could Williams have violated the California battery statute without also violating the Kansas battery statute? We think not. His mere touching of his spouse in an "insolent, rude, or an angry manner," regardless of whether it caused "bodily harm," would be sufficient to violate both statutes. See California Jury Instructions, Criminal 16.141. Any worse conduct—use of force or violence—would necessarily have violated the Kansas statute as well, which criminalizes touching someone in a "rude, insulting or angry manner." Despite the facial difference between California's "use of force or violence" element and Kansas' "bodily harm" or "physical contact" element, we find the two, as interpreted by controlling decisional law, to be identical.

We thus find that the elements of the California crime of battery of a spouse are narrower than or identical to the elements of the Kansas domestic battery statute. Under *Wetrich*, those two crimes are comparable. The district court thus correctly classified Williams' 2002 California battery conviction as a person misdemeanor.

Williams was convicted in Nevada in 2003 of criminal battery and in 2009 of domestic battery. As to these misdemeanor crimes, the State generally contends that they are comparable to battery and domestic battery. Williams responds that both crimes have elements broader than any Kansas person misdemeanor. Neither party attempts to do an element by element comparison of one crime to the other, as *Wetrich* subsequently teaches.

Nevada defined battery at the relevant time as "any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481(1)(a) (2003).

Kansas defined simple battery at the time of Williams' current offenses as: "(1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2013 Supp. 21-5413(a). "[B]odily harm has been defined as any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner." *State v. Johnson*, 46 Kan. App. 2d 870, 881, 265 P.3d 585 (2011).

At first blush, the Nevada battery statute seems to be broader than its Kansas counterpart because the Nevada statute does not require either bodily harm or that the contact be done in a rude, insulting, or angry manner. But when we examine how Nevada decisions have interpreted the statutory elements, we find them comparable, as *Wetrich* requires.

As noted in our previous opinion, the Nevada Legislature adopted the California battery statute in 1925, and Nevada courts have considered California precedent persuasive when determining what conduct satisfies the elements of battery. *Hobbs v.*

*State*, 127 Nev. 234, 238, 251 P.3d 177 (2011). Having reviewed the California precedent above, we adopt that rationale as to this identical Nevada battery statute.

Nevada's battery statute requires the "willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481(1)(a). But the Nevada Supreme Court has found that the phrase "use of force or violence" means "that force need not be violent or severe and need not cause bodily pain or bodily harm." 127 Nev. at 238. Instead, "'[o]nly a slight unprivileged touching is needed to satisfy the force requirement of a criminal battery.'" 127 Nev. at 239 (quoting *People v. Ausbie*, 123 Cal. App. 4th 855, 860 n.2, 20 Cal. Rptr. 3d 371 [2004], *disapproved of on other grounds by People v. Santana*, 56 Cal. 4th 999, 157 Cal. Rptr. 3d 547, 301 P.3d 1157 [2013]). The Nevada Supreme Court interpreted its statute to mean that "battery is the intentional and unwanted exertion of force upon another, however slight" and found that intentionally spitting on another was enough to satisfy the use of force or violence battery element. *Hobbs*, 127 Nev. at 239. The court noted that its construction of the statute "comports with the common law definition of battery. 2 Charles E. Torcia, *Wharton's Criminal Law* § 177, at 414-15 (15th ed. 1994) ('At common law, the contact need not result in physical harm or pain; it is enough that the contact be offensive.')." 127 Nev. at 238.

Harmless but offensive force satisfies the willful and unlawful use of force or violence element of the Nevada battery statute. Williams could not have willfully and unlawfully used force or violence upon the person of another, so as to violate the Nevada statute, without touching that person in a rude, insulting, or angry manner, as would violate the Kansas statute.

The elements of the Nevada battery statute, as interpreted by the Nevada Supreme Court, are narrower than or identical to the elements of the Kansas battery statute. Under *Wetrich*, those two crimes are comparable, so the district court correctly scored Williams' 2003 Nevada battery as a person crime.

7

At the time of Williams' 2009 Nevada domestic battery conviction, Nevada defined that crime by using the definitions of domestic violence and battery. Nevada defined domestic violence as:

"(1)Domestic violence occurs when a person commits one of the following acts against or upon the person's spouse or former spouse, any other person to whom the person is related by blood or marriage, any other person with whom the person is or was actually residing, any other person with whom the person has had or is having a dating relationship, any other person with whom the person has a child in common, the minor child of any of those persons, the person's minor child or any other person who has been appointed the custodian or legal guardian for the person's minor child:

(a) A battery." Nev. Rev. Stat. 33.018(1)(a) (2008).

Nevada defined battery as noted above—"any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. 200.481(1)(a) (2008).

Kansas defined simple battery at the time of Williams' current offenses as: "(1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2013 Supp. 21-5413(a). As we have concluded above, the elements of Nevada's battery statute are narrower than or identical to the elements of Kansas' battery statute.

The sole difference to our analysis here is that Nevada's domestic violence statute limits the categories of persons who may be victims of that crime. Those categories are broader than the "family or household member" category in the Kansas domestic battery statute. See K.S.A. 2013 Supp. 21-5414(a). For example, the Nevada domestic violence statute includes as victims: "any other person to whom the person is related by blood or

marriage, . . . the minor child of any of those persons, . . . [and] any other person who has been appointed the custodian or legal guardian for the person's minor child." It is thus possible that Williams could have committed the crime of domestic violence in Nevada against a person who was not "a family or household member," as the Kansas domestic battery statute requires. The Nevada domestic violence statute is thus not comparable to the domestic battery statute in Kansas.

Nonetheless, we reject Williams' assertion that the Nevada crime of domestic battery has elements broader than *any* Kansas person misdemeanor. The State suggests in its brief that domestic violence crimes and battery crimes are closely related, and we agree. Based on our analysis above, the Nevada crime of domestic violence is comparable to the crime of battery in Kansas. Although the Nevada crime of domestic violence broadly defines potential victims, those categories of victims all fall within the even broader category of victims in the Kansas battery statute—"another person." The Nevada domestic violence statute is thus narrower than the Kansas battery statute, violation of which is a person crime. The district court thus properly found Williams' 2009 Nevada domestic battery to be a person misdemeanor.

As a result, the district court properly classified Williams' 2002 California conviction for battery of a spouse, his 2003 Nevada conviction for battery, and his 2009 Nevada conviction for domestic battery as person misdemeanors when calculating his criminal history score for sentencing.

Accordingly, we affirm the remanded portion of this case.